I would like, if I may, to reserve five minutes for rebuttal. All right. Counsel, please check your time on the clock. Okay. Thank you. Thank you. The sole issue before this Court is whether the lower court properly granted Cutter judgment on the pleadings. It did so because it found that on the pleadings there was no possibility that plaintiffs could prove consummation of the credit transaction. That finding is clearly incorrect. The controlling cases are the three decisions by this Court in Edwards v. Marron Park, which was decided this year, Slank v. Transworld Systems, and Burnett v. Alijuana Pawn Shop. The Fourth Circuit decision in I. V. Coons, the Eighth Circuit decision in Dryden v. Lou Budkey, and the Fifth Circuit decision in Williams v. Public Finance are directly on point and correct as well. The facts alleged in the complaint are fairly straightforward. The plaintiffs had just financed a car, a Mazda truck from another dealership, came into Cutter to sell their second car, were talked into buying a new truck and giving Cutter the truck and the car and a check for the down payment. The complaint alleges that credit was extended and states that plaintiffs were afraid to get into this deal because they had difficulty financing a Mazda truck, but did so because the defendant said, don't worry, financing is guaranteed, this is a done deal. Thus, plaintiffs took the truck, the GMC truck from Cutter, they left their other two cars, the new truck and the other car, went home and assumed as part of the deal, Cutter said they would pay off the Mazda truck, which they assumed would happen. They went home, they used the truck for six weeks and then Cutter, two days before Christmas, called and said the financing didn't go through, you have to bring the truck back. In fact, there was an approval of credit, but this was unknown to the plaintiffs at the time. The result was they hadn't made payments on the Mazda truck, so the bank repossessed the truck from the Cutter lot, Cutter let them have it. They lost the Mazda truck that they had just qualified for financing, they lost the GMC truck that Cutter had promised was a done deal financing guarantee and had received an approval from First of Alliance Bank. They're credible. They didn't guarantee that they had already received approval, they just said it's guaranteed, it's a done deal. Correct. But they didn't say we've already received approval. No, no. I misunderstood you. That's exactly right. You didn't add that. No, but they did receive an approval and the written approval number 155331. Was that part of the record, though, counsel? Yes, it is. Where is that? Was that before the district court? Yes. It was from the deposition of I.S. Dean, the general manager. But in the judgment of pleadings, this was resolved on the pleadings, so the deposition testimony wouldn't be pertinent if this case was resolved on the pleadings. Well, if it could be resolved on the pleadings. The point is the pleadings have to show, Judge, that there's no possibility to succeed. Obviously that's not true. Let me ask you this. Would you agree that whether or not the loan was consummated is governed by state law? I do. In this case, the state law of Hawaii. Correct. Okay. And so in the state of Hawaii, in order for a contract to be consummated, I know you're watching the time. I'll try not to intrude into it. Wouldn't there have to be a signature, a loan on the signature, the credit contract? There was actually a loan on the credit contract, but no. A signature? Yes. In two ways. Under state law, any document that evidences a sale can qualify for that purpose. It doesn't have to be the credit sale contract. And Exhibit B was the order of the sale. That was signed by the plaintiff, and it showed a $5,000 down payment and $22,710 to be paid later. That was for purchasing a car, but not for consummating the loan. No. That was for purchasing the car. But the lender, in truth and lending in this type of case, is the dealership, not the bank. That's different from Jackson v. Grant, where the lender is the mortgage lender. In truth and lending, the lender is the car dealer, not the bank specifically. Now, so what are you relying upon to say that the lender in this case was the car dealer? It says so in the statute. The creditor is the one to whom the credit is originally extended by. That begs the question, though, because there are two separate transactions. One is buying the car. One is financing the car. That's right. But that's not really, Judge, that's not an issue. It's clear under the statute and under the case law. It used to be under the old law that both were creditors, the seller and the financing agent. That's not true anymore. All right. It's only the seller that's the creditor. I don't want to take any time for rebuttal, so we'll hear from the appellate, and then you can come back. Thank you, counsel. Good morning, Your Honor. This is Jan Weekman on behalf of Cutter Plenty and GMC. Judging from the court's inquiry, I believe that I've adequately briefed what I need to brief in my reply. However, if the court has questions regarding various issues, I'm prepared to answer them at this time. I would like to state that exhibit B, as attached to the complaint, is not a credit, not an operative credit document. It does not call for it. It does not. It calls for at best one payment. There is nothing in that document to indicate that the dealer is a lender. Further, that document has, in at least four places, indications that something further must be done in order to obtain the vehicle, both at the top of the, not pointed out in my brief, but discovered by, so I don't know what to do, both at the top of the contract, wherein it states that for cash or credit and pursuant to a sale contract, the typed-in portion that indicates not only who the lender will be, but that the sale is subject to credit, and at the bottom on the left-hand side, in two places, where it says subject to credit. In this particular instance, it is like Jackson v. Branch, wherein a series of documents were executed in anticipation of obtaining financing, and as the court has pointed out, it is two transactions. There is the purchase order for the sale of the car. There is the obtaining of financing. But would somebody who is unknowledgeable about the way the financing works, would they know that it's two transactions? Wouldn't they be entitled to rely upon the salesperson's reassurance that it's a done deal? I believe that if you take the position of the reasonable consumer, as opposed to the least sophisticated consumer, I believe that the unsigned document that was to be the financing document has in it or on the back of it an immigration clause, which says rely on no other or unparaphrased. But it wasn't signed, so it can't be held to that knowledge. If they didn't sign that, then there's nothing in the record indicating they even read that. If Your Honor is excluding the exhibits that Mr. Pearce submitted, then I agree. There is nothing in the record. So then why shouldn't the representation of the salesperson bind the car dealership regarding whether or not there was a loan transaction? I don't believe that. Assuming the facts as pledged is true, the oral representation of an employee, this is a done deal. I don't have an answer for you. I think that a reasonable consumer would believe they have to apply for credit. In this instance, we know that the truck was repossessed. Because the consumers thought that the truck was in the ownership of Cutter, so they didn't have to make payments on it. That would be a reasonable assumption, wouldn't it? Well, it would be, except for the time frame. The initial transaction occurred, I believe, towards the latter part of November. And even according to the pleadings, which are alleged as true, the car wasn't returned until, I believe, right before Christmas or right after Christmas. And you're saying that? That one month would not be sufficient to repossess the vehicle. It would be one or two nonpayments at the most, just by deducing the fact that the bank doesn't want the car. So what are you arguing by making that point? My point is that they were relentless at the time they brought the car. That's my point. Go ahead. Mr. Payer's argument was that the document by statute amounted to making the dealer the creditor. What's your reply to that? My reply is that, assuming he's referring to the Truth in Lending statute, first of all, if you examine this transaction under a microscope, there aren't four payments to be made. It's a one-payment. It's a seven-day payment. So you say that takes it out of the statute? I'd say there's nothing in this. There's no finance charge. There's no imposition of finance charge. There's no installment payments. There's no APR disclosed. There's nothing in Exhibit B that would be charged to a credit customer that wouldn't be charged to a cash customer. There's nothing there. That is a cash transaction vehicle, not a strike van, a cash transaction contract. But isn't there reference to something to be paid? Yes, there is. There is something to be paid. You must pay this. Isn't that credit? No, it is not credit. Why isn't it? It's not credit because there's no interest charge. No, people do extend credit without interest. I don't know. I'm sorry, Your Honor. I believe that the statute provides it. The statute requires interest to be charged. It doesn't require interest to be charged, but it makes multiple exceptions for people who don't charge interest, notably, for instance, attorneys who charge their clients, who allow their clients to make payment over time. I don't have the site of my career tips, but it does, in fact, make multiple exceptions for that. That is not a credit instrument. Okay. I just want to test it. I've got to look at it. I don't really know in detail. It's not a credit instrument. Thereon is listed an express condition precedent that financing must be obtained. Until that financing is obtained, no contract is formed. I've cited as Hawaii's under Hawaii's state law at least two separate examples. I believe the court has examined one. There is an example, Section 437, regarding the fact that if the financing is not granted pursuant to an application on the day you purchase the contract, there's a void on its inception. Therefore, there was no contract under state law. Why wasn't the loan document signed? I have no idea. I wasn't there. I don't know. I don't know why it wasn't signed. There are a number of inferences that you can draw from that, one of them being that the roses decided they didn't want to go through with the document, strike that with a transaction. Another inference that can be drawn from that is that I don't know why it wasn't signed. It wasn't signed. It is the document that they received. It was attached to and was prepared to be claimed as an exhibit. When you reviewed this, as you obviously did, did anything strike you as unusual about the transaction? I hate to beg the question, but as opposed to what? This was a car trade. The unusual part is there are two vehicles in the trade. That isn't generally the way it happens. Generally, it's one vehicle at a time. And there's no obligation to notify the person who brought the car in that was eventually repossessed that it's going to be repossessed. I don't know how it came about that they even knew where the car was so they could repossess it at the car place unless your people told them. That I don't know, Your Honor. I know. It's not a part of the record. But that's what I mean. When I ask you about unusual, that seems to me somewhat unusual. You said that they didn't know. Well, one could speculate on that. One, they repossessed it at the rather than you say what they would delinquent. Well, if they were delinquent, normally you'd go to where you think the car was kept and the place you think the car was being kept is at the home of the purchaser. But they came to the dealership. It looks to me as if one dealer calls another and says it is your car. Well, Your Honor, I don't know that that occurred, but I would say that it did. We can't decide the case on that. But I would say there would be a more reasonable explanation, which is this is a very small place and that there are very few places that extend financing and that Cutter is a very large dealership. And the fact that we made an application on Mr. and Rose's behalf for credit from that dealership would give somebody over at First Hawaiian Bank a pretty good clue as to where the car was or wasn't. That's a general decision. Thank you, Your Honor. But it just seemed to me a very unusual transaction. It's not? I don't know. I don't think that it does business. I really don't know how it happened. Is the Court having further questions? It appears not. Thank you, Counsel. Thank you, Your Honor. Thank you. I want to address the question that you raised briefly. On the first part of my addendum, Section 15 U.S.C. 1602 F2 states, the creditor is the person to whom the debt arising from the consumer credit transaction is initially payable in the face of the evidence of indebtedness. But that presupposes a credit transaction. Right. Now, the credit sale contract also says the seller is the creditor. That's the one that we're saying so far is not signed. But that's not even true. Because if you look at Exhibit 11 to the deposition, the addendum to the First Hawaiian Bank sale contract. Counsel, the problem with looking at the position documents is that this was resolved on the pleadings. Yes. But, Judge, in order to resolve it on the pleadings, Maren Park says there has to be no way that the plaintiff could win at trial. When looking at the pleadings. The pleadings don't answer the question. That's the point. So it's an open question as to whether plaintiff can produce documents. Plaintiff has said credit was extended in his pleadings. Judge Mulway was correct in deciding that implies consummation. You can't read the pleadings in favor of the defendant on a motion to dismiss or a motion for judgment on the pleadings. The inferences have to go with the plaintiff. And I've shown in the record documents that show we will be able to prevail. I don't have to allege all of that in a short and plain statement of the case on the pleadings. I just have to say we're going to see. The problem is that the documents you attach to the pleadings show a lack of consummation. That was the problem. But those aren't the only documents that exist. We're not alone by attaching two documents. It doesn't bind us to say that's all there is. We said there was an extension of credit. We said they guaranteed financing. We said it was a done deal. All of those point to questions of fact to be decided later on that this was a credit transaction. And I want to point you out at Exhibit 11 because it's very important. This is their document. It says this addendum to FHB credit sale contract is attached and intended to be the front page of the credit sale contract. And it is signed by the plaintiffs with their initials. And the statute says 476-3 says the party's signature shall be made by use of any name including trade or assumed name upon the credit sale contract or by any word or mark used in lieu of a written signature. So their own document says this is the first page of the credit sale contract. This is signed. This is in our appendix, and it's Exhibit 11 to the deposition. And the statute is referring to our addendum in the addendum to our brief. So, in fact, you can see that they were signed. The trial judge specifically did not rule out the other exhibits. He left them in. He just said they didn't matter. Well, they do matter. He didn't exclude those exhibits. He specifically said I'm not going to exclude the other documents. They just don't matter. He was wrong. They do matter. This document was signed, and it says it's the first page of the credit sale contract. So even on that, there is a financing document signed by the plaintiffs. So you still have your estate law claims that you can pursue. Is that correct? Theoretically. So why is it so important for you to have this claim so that you can rescind the transaction? It's very important, Judge. This is the whole purpose behind truth amending. Look what happened to these people. They come in. They give their cards. They give a check. They're six weeks out on the road. They should have contacted you before they went in. That never happens. But when we review, we have to see, did the judge err in deciding this on the leave-in? He clearly did. Specify. Okay. Marin Park, which you guys just decided, or the court just decided, says a complaint is sufficient if it's just a short and plain statement of the case. We can just say they violated truth in lending. The complaint says there was credit extended. That should be enough by itself. It also says that the defendant guaranteed fine. He said it was a done deal. There is stop to deny that on the face of the complaint, assuming that was true. If you have a document which is a part of this record which shows that the transaction was done. But it doesn't. It shows Exhibit B was signed under state law. That's sufficient. And it shows, as Judge Noonan said, that that was credit. If you pay $5,000 down and you take the car and you owe $22,710, that's credit. Credit is deferral of a debt by definition. The debt was obviously deferred. $22,710 was deferred. So there was credit, whether the document was signed or not. You don't need to be blind to the fact that Exhibit 11 was signed. The trial judge did not exclude that exhibit. He considered it. He said it doesn't matter. He was wrong. Thank you very much, Judge. Okay. Thank you very much. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is King v. International Data Services.
judges: Farris, Noonan, Rawlinson